Eric Baum NY#2591618 (Pro Hac Vice To Be Filed)
Andrew Rozynski NY#5054465 (Pro Hac Vice To Be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East
Fourth Floor
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: ebaum@EandBLaw.com
        arozynski@EandBLaw.com

William A. Richards #013381
Alan S. Baskin #013155
David E. Wood #021403
Leslie Ross #027207
**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsimile No. 602-595-7800
E-mail:  brichards@baskinrichards.com
         alan@baskinrichards.com
         dwood@baskinrichards.com
         lross@baskinrichards.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laurie Reynolds-Sherwood and Robert Sherwood,<br><br>                              Plaintiffs,<br><br>v.<br><br>Dignity Health d/b/a Dignity Health Gilbert Urgent Care,<br><br>                              Defendant. | **Case No.**<br><br>**COMPLAINT** |

Plaintiffs Laurie Reynolds-Sherwood and Robert Sherwood bring this action, by and through their undersigned counsel, Eisenberg & Baum, LLP (pro hac vice application to be

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

filed), and Baskin Richards PLC, and for their claims against Defendant Dignity Health doing business as Dignity Health Gilbert Urgent Care ("Dignity Health Urgent Care" or "Defendant"), hereby allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs are deaf individuals who communicate primarily in American Sign Language ("ASL"), which is their expressed, preferred, and most effective means of communication.  Defendant, Dignity Health, discriminated against Plaintiffs by refusing to provide auxiliary aids and services despite their requests for effective communication. Defendant discriminated against Plaintiffs by failing to provide on-site ASL interpreters when necessary, by providing malfunctioning Video Remote Interpreting ("VRI"[1]) systems, by failing to adequately train its personnel in the use of VRI systems, and by requiring Plaintiffs to rely upon other means of communication, including passing of notes and/or lip reading that are inadequate for the medical treatment required by the Plaintiffs.  Plaintiffs bring this action to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's services.  Plaintiffs seek declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* and its implementing regulation, 28 C.F.R. Part 36; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84; Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 (the "ACA"); the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq.*, and other state and federal rights.

2.    Defendant has demonstrated and continues to demonstrate that Defendant's staff is not properly trained regarding how to identify when live, in-person interpreter services are

---

[1] Video remote interpreting is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or off-site interpreter.

required for effective communication with Deaf patients and their companions, and when other forms of communication, including VRI technology, the passing of written notes, or lip reading offer inadequate and ineffective communication for a deaf patient or his deaf companion.

3. Defendant has similarly demonstrated that Defendant's staff is not properly trained regarding how to utilize or maintain VRI systems or fix malfunctioning VRI systems. This lack of training resulted in delays and failures to communicate with Plaintiffs in critical medical care situations. As a result of these delays and failures, Plaintiffs received care and service that was objectively substandard and that was not equal to the care and service provided to hearing patients and hearing companions of patients.

4. Upon information and belief, despite being put on notice that problems with VRI resulted in ineffective communication with Plaintiffs, Defendant continues to wrongfully insist that VRI systems or other inadequate forms of communication be utilized for Plaintiffs as a substitute for qualified, in-person ASL interpreters.

5. Plaintiffs bring suit to address these discriminatory practices, obtain relief against further, future discrimination, and obtain compensation for the damages caused by Defendant's discriminatory and unlawful policies, procedures and practices.

## THE PARTIES

6. Defendant Dignity Health, doing business as Dignity Health Gilbert Urgent Care, at all times hereinafter mentioned, is a corporate entity that was and is still licensed and doing business in the State of Arizona, with a principal place of business in Arizona at 1501 N. Gilbert Road, Gilbert, Arizona 85234. Dignity Health, on information and belief, owns and operates numerous medical facilities in California, Arizona, and Nevada, and has a principal corporate place of business at 185 Berry Street, Suite 300, San Francisco, California. Dignity Health Urgent Care Gilbert is a place of public accommodation under Federal, State, and Local anti-discrimination laws and a recipient of federal financial assistance. Thus, it is subject to the requirements of the ADA, Section 504 of the Rehabilitation Act, the ACA, and the AzDA.

7. On information and belief, Dignity Health has sufficient financial resources to afford all aids and services necessary to provide effective communication to the Plaintiffs.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

8.      Plaintiffs Laurie Reynolds-Sherwood and Robert Sherwood are a married couple residing in Maricopa County in the State of Arizona.

9.      Plaintiffs are profoundly Deaf and communicate primarily in ASL, and are substantially limited in the major life activities of hearing and speaking within the meaning of the ADA, the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA.

10.      Plaintiff Laurie Reynolds-Sherwood was a patient and Plaintiff Robert Sherwood was a companion at Dignity Health Urgent Care in January 2016, August 2016, January 2017, and October 2017.

11.      Plaintiff Robert Sherwood was a patient and Plaintiff Laurie Reynolds-Sherwood was a companion at Dignity Health Urgent Care in March 2016.

12.      Plaintiffs Laurie Reynolds-Sherwood and Robert Sherwood were patients and companions at Dignity Health Urgent Care, where they were denied appropriate auxiliary aids and services for their disabilities despite repeated requests by Plaintiffs to facilitate effective communication between them and Dignity Health's agents, employees, and/or medical staff during their medical treatment and care.

13.      Throughout visits by Plaintiffs at Dignity Health Urgent Care between January 2016 and the present, Defendant repeatedly denied Plaintiffs effective communication as required by law.  Defendant Dignity Health's denial of effective communication for Plaintiffs includes providing Plaintiffs with malfunctioning VRI systems and/or repeatedly denying their requests and/or obvious need for on-site qualified ASL interpreters.

14.      When Plaintiffs attempted to utilize VRI equipment at Dignity Health Urgent Care, they often stopped, or failed to work properly, leaving communication unreliable or nonexistent. Instead of providing an on-site ASL interpreter when the VRI equipment did not work, Defendant chose to do nothing at all or to force Plaintiffs to rely on other inadequate methods of communication, resulting in ineffective communication with Plaintiffs.

15.      Plaintiffs put Defendant Dignity Health on notice that the VRI systems at Dignity Health Urgent Care did not provide effective communication. Despite this notice, Defendant

4

continued to wrongfully mandate the use of VRI instead of on-site, qualified ASL interpreters.

## JURISDICTION & VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.  In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, the parties all reside within this District, and the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

## STATEMENT OF FACTS

18.     Plaintiffs Laurie Reynolds-Sherwood and Robert Sherwood are profoundly deaf and require a qualified sign language interpreter to communicate effectively in medical settings.

19.     On January 26, 2016, Plaintiffs visited Dignity Health Urgent Care because Ms. Reynolds-Sherwood was experiencing a severe cough and fever after undergoing shoulder surgery the previous week.

20.     When Plaintiffs arrived at the urgent care facility, Defendant's staff provided them with a VRI machine.

21.     After Ms. Reynolds-Sherwood checked into the facility, Defendant's staff took her and Mr. Sherwood back to an area of the hospital be examined by a physician.

22.     Defendant's staff brought a VRI machine to be used for Ms. Reynolds-Sherwood's exam.

23.     When Defendant's staff attempted to use the VRI machine, it experienced technical issues and failed to function properly.

24.     Because of the problems with the VRI machine, the physician used handwritten notes to communicate with Plaintiffs during Ms. Reynolds-Sherwood's exam.

25.     After being examined by the physician, Defendant's staff took a sample of Ms. Reynolds-Sherwood's blood for glucose testing.

26.     Next, Defendant's staff took an X-ray of Ms. Reynolds-Sherwood's chest.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

27.     After spending approximately two hours at Defendant's urgent care facility, Ms. Reynolds-Sherwood was discharged.

28.     During their January 26, 2016 visit at the Defendant's urgent care facility, Ms. Reynolds-Sherwood and Mr. Sherwood were denied effective communication, including that communication that was required for them to adequately understand what was happening in Ms. Reynold-Sherwood's medical care, for them to actively participate in that care, and to allow them to ask and have answered their questions about the same in a manner equivalent to that provided by the Defendant to its hearing patients and patient companions.

29.     On March 17, 2016, Ms. Reynolds-Sherwood and Mr. Sherwood again visited Dignity Health Urgent Care because Mr. Sherwood was experiencing a severe cough and sore throat that was persistent through most of the day.

30.     When Plaintiffs arrived at the facility, Defendant's staff provided a VRI machine for them to use.

31.     However, the VRI machine experienced technical problems such as slowness and screen freezing, and failed to function properly.

32.     Because of the failure with the VRI machine, Defendant's staff resorted to using handwritten notes to attempt communication with Plaintiffs during Mr. Sherwood and Mrs. Reynolds-Sherwood's visit.

33.     However, because Mr. Sherwood was dizzy and feeling weak, it was difficult and uncomfortable for him to write notes with Defendant's staff.

34.     Through handwritten notes, Defendant's staff acknowledged and apologized to Plaintiffs that the VRI machine was not working.

35.     Also through handwritten notes, Plaintiffs expressed their desire for a live, onsite ASL interpreter to be present for Mr. Sherwood and Mrs. Reynolds-Sherwood's visit.

36.     While Mr. Sherwood and Mrs. Reynolds-Sherwood were at Defendant's facility, a physician came to examine Mr. Sherwood.

37.     This physician, on information and belief, was named Dr. Engel.

38.     Defendant's staff gave Mr. Sherwood some medicine for his symptoms, and

discharged him that afternoon, without providing Mr. Sherwood and Mrs. Reynolds-Sherwood with a live, onsite ASL interpreter or a functioning VRI machine.

39.     During their March 17, 2016 visit to the Defendant's urgent care facility, Mr. Sherwood and Ms. Reynolds-Sherwood were denied effective communication, including that communication that was required for them to adequately understand what was happening in Mr. Sherwood's medical care, for them to actively participate in that care, and to allow them to ask and have answered their questions about the same in a manner equivalent to that provided by the Defendant to its hearing patients and patient companions.

40.     On August 21, 2016, Ms. Reynolds-Sherwood and Mr. Sherwood again visited Dignity Health Urgent Care because Ms. Reynolds-Sherwood was experiencing a severe cough, nausea, and ear pain.

41.     When Plaintiffs arrived at the facility, Defendant's staff provided a VRI machine for them to use.

42.     However, the VRI machine experienced technical problems and failed to function properly.

43.     Because of the failure with the VRI machine, Defendant's staff resorted to using handwritten notes to attempt communication with Plaintiffs during Ms. Reynolds-Sherwood's evaluation in the triage area.

44.     After being at the urgent care facility for about an hour, Ms. Reynolds-Sherwood was examined by a physician.

45.     On information and belief, the physician's review of Ms. Reynolds-Sherwood was limited due to Ms. Reynolds-Sherwood's disability and their inability to communicate effectively.

46.     After staying at Defendant's urgent care facility for approximately two hours, Ms. Reynolds-Sherwood was discharged by Defendant's staff.

47.     During their August 21, 2016 visit at the Defendant's urgent care facility, Ms. Reynolds-Sherwood and Mr. Sherwood were denied effective communication, including that communication that was required for them to adequately understand what was happening in

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Ms. Reynold-Sherwood's medical care, for them to actively participate in that care, and to allow them to ask and have answered their questions about the same in a manner equivalent to that provided by the Defendant to its hearing patients and patient companions.

48.     On January 25, 2017, Ms. Reynolds-Sherwood and Mr. Sherwood again visited Dignity Health Urgent Care because Ms. Reynolds-Sherwood was experiencing a severe cough.

49.     After Plaintiffs arrived at the urgent care facility, they requested an on-site ASL interpreter so that they could communicate effectively with Defendant's staff.

50.     However, Defendant's staff refused to provide an on-site ASL interpreter.

51.     Defendant's staff attempted to provide Plaintiffs with a VRI machine, but that machine experienced technical issues and failed to operate.

52.     Because of the problems with the VRI machine, Defendant's staff resorted to using handwritten notes to attempt communication with Plaintiffs.

53.     Through handwritten notes, Defendant's staff told Plaintiffs that they would try to fix the VRI machine so that it would be available for Ms. Reynolds-Sherwood during her examination by the physician.

54.     However, Defendant's staff failed to repair the VRI machine, and Plaintiffs had to communicate with the physician using handwritten notes, which did not provide the Plaintiffs with effective communication.

55.     Approximately one hour after Plaintiffs had arrived at the urgent care facility, Ms. Reynolds-Sherwood was discharged.

56.     During their January 25, 2017 visit at the Defendant's urgent care facility, Ms. Reynolds-Sherwood and Mr. Sherwood were denied effective communication, including that communication that was required for them to adequately understand what was happening in Ms. Reynold-Sherwood's medical care, for them to actively participate in that care, and to allow them to ask and have answered their questions about the same in a manner equivalent to that provided by the Defendant to its hearing patients and patient companions.

57.     On October 31, 2017, Mr. Sherwood drove Mrs. Reynolds-Sherwood to Dignity Health Urgent Care because Mrs. Reynolds-Sherwood was experiencing a high fever and severe

8

cough.

58.     A few minutes after Mrs. Reynolds-Sherwood checked into the facility, Defendant's staff brought her and Mr. Sherwood back to an area of the hospital so that Mrs. Reynolds-Sherwood could be examined.

59.     Defendant's staff attempted to provide Plaintiffs with a VRI system, but the VRI system experienced technical issues such as screen freezing.

60.     Next, a physician came to examine Mrs. Reynolds-Sherwood.

61.     The physician attempted to turn on the VRI system, but the VRI system indicated that no interpreter was available.

62.     Because of the difficulties with the VRI system, Defendant's staff resorted to using handwritten notes to attempt communication with Mrs. Reynolds-Sherwood and Mr. Sherwood.

63.     Defendant's staff diagnosed Mrs. Reynolds-Sherwood with pneumonia and the flu, and gave her several medications that are meant to treat pneumonia and the flu.

64.     Due to the lack of effective communication, Mrs. Reynolds-Sherwood and Mr. Sherwood did not understand what some of the medications were or what they were for. Also, due to the Defendant's failure to provide them necessary interpreter services, the Plaintiffs were unable to obtain an explanation of what those medications were and what they were for.

65.     Next, Mrs. Reynolds-Sherwood was discharged from Dignity Health Urgent Care.

66.     During their October 31, 2017 visit at the Defendant's urgent care facility, Ms. Reynolds-Sherwood and Mr. Sherwood were denied effective communication, including that communication that was required for them to adequately understand what was happening in Ms. Reynold-Sherwood's medical care, for them to actively participate in that care, and to allow them to ask and have answered their questions about the same in a manner equivalent to that provided by the Defendant to its hearing patients and patient companions.

67.     That evening, at or around 9:00 P.M., Mrs. Reynolds-Sherwood took one of the medications she was given.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

68.     On November 1, 2017, at or around 12:30 A.M., Mrs. Reynolds-Sherwood began experiencing severe stomach pain, and Mr. Sherwood took her to a different hospital.

69.     After being examined and undergoing tests at the hospital, Mrs. Reynolds-Sherwood was informed that she was experiencing a urinary tract infection and not pneumonia or the flu, and that she should throw away the medications she was given by Defendant's staff.

70.     On November 2, 2017, Mr. Sherwood took Mrs. Reynolds-Sherwood to her physician's office for a chest examination.

71.     After a physical examination, Mrs. Reynolds-Sherwood's physician confirmed that she was not suffering from pneumonia or the flu.

72.     Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Plaintiffs are Deaf and require the use of qualified on-site ASL interpretation services through Plaintiffs' interactions with Defendant and Plaintiffs' medical records, Defendant nonetheless failed to provide a qualified on-site ASL interpreter for Plaintiffs and instead attempted communications through a faulty VRI system and handwritten notes which were ineffective.

73.     Mrs. Reynolds-Sherwood and Mr. Reynolds thus remained confused and concerned about Mrs. Reynolds-Sherwood's condition.

74.     Given the proximity of Dignity Health Urgent Care to their home, it is reasonably foreseeable that Plaintiffs will again be a patient or a patient's companion at the Dignity Health Urgent Care, or some other facility of Defendant.

75.     Based on Defendant's previous and repeated denials of effective communication for Plaintiffs, and its repeated denials of effective communication to other deaf patients, it is reasonably foreseeable that Defendant will deny Plaintiffs effective communication again in the future.

76.     Defendant's failure to provide on-site, qualified sign language interpreters made Plaintiffs' treatment, subsequent follow-up appointments, and hospital experiences more difficult and caused harm because it prevented effective communication between Plaintiffs and Defendant's staff.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

77.   As a result of Defendant's failure to ensure effective communication with Plaintiffs, Plaintiffs received care and service that was objectively substandard and that is inferior to care provided to patients or companions who can hear.

78.   Defendant intentionally discriminated against Plaintiffs and acted with deliberate indifference to their communication needs, causing them to endure humiliation, fear, anxiety, and emotional distress.

79.   Defendant's denial of effective communication during the medical treatments of Plaintiffs caused Plaintiffs significant pain, suffering, and emotional distress. On information and belief, due to Defendant's refusal to provide effective communication, Plaintiffs did not meaningfully understand critical information about their diagnoses, prognoses, medication and/or treatment options and care and lacked a full and complete understanding of the risks and benefits thereof.

80.   As alleged above, Plaintiffs repeatedly put Defendant's staff on notice that communication was not effective by alerting them of the inadequacy of VRI systems, the inadequacy of handwritten communications and to their need for qualified ASL interpreters.

81.   Despite such notice, Defendant failed and/or refused to provide qualified on-site ASL interpreters, failed and/or refused to ensure that VRI systems were appropriate for Plaintiffs' circumstances, failed and/or refused to ensure that available VRI systems were properly functioning, failed and/or refused to ensure that the Defendant's agents were properly trained and qualified in the use of the VRI systems, and failed and/or refused to fix VRI systems that were not working properly, or failed and/or refused to understand the inadequacy of handwritten notes as a sole method of communication.

82.   Rather, Defendant knowingly limited Plaintiffs to the little communication the Plaintiffs could achieve through the malfunctioning VRI, and through such inadequate methods as vague gestures, cryptic notes, or trying to force Plaintiffs to read lips.

83.   Upon information and belief, Defendant is aware of its obligations under federal and state law to provide adequate and effective communication for Deaf, hard of hearing, and speech impaired individuals that visit its medical facilities as either patients or companions of

patients.

84.     Also upon information and belief, Defendant and its agents, including those medical personnel attending Plaintiffs, were aware that the failure to provide adequate and effective communication to Plaintiffs could result in serious and harmful anxiety, confusion, lack of understanding, frustration, depression and other serious emotional harms, could prevent Plaintiffs from enjoying the right and ability to understand and participate in their medical care, and would expose them to serious risks of physical harm and injury due to their inability to adequately understand their medical conditions, the treatments they were receiving or that were being recommended to them, and the best and most appropriate courses of action to ensure their long term recovery and health.

85.     Also upon information and belief, Defendant and its agents, including those medical personnel attending Plaintiffs, were aware that the Defendant's failure and refusal to provide adequate and effective communication for Plaintiffs could result in poor or materially diminished patient care and outcomes contributing to long-term physical harms and requiring additional medical care.

86.     Upon information and belief, Defendant refuses to hire qualified on-site qualified ASL interpreters as a matter of policy at its hospital and other facilities, and insists upon communication through such inadequate means of communication as handwritten notes, gestures, lip reading, and/or VRI in all cases.

87.     Upon information and belief, the refusal to offer on-site, qualified, ASL interpreter services to Plaintiffs is the result of a policy or practice of Defendant to discourage the use of qualified on-site interpreters without regard to whether VRI services or other methods of communication will provide effective communication.

88.     Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and no substitute for direct doctor-patient communication through a qualified Sign Language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips.  Even the most adept lip-readers, in an ideal one-to-one situation, have been found

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

to understand only 26% of what is said.

89.     Reliance by Deaf and hard of hearing and speech impaired individuals upon family members to interpret medical communications for them is unwise and dangerous. Such family members are generally not trained to act as interpreters, particularly in medical and hospital settings. Family members often are untrained in accurately and precisely interpreting and conveying for and to the hearing impaired individual the complete and accurate content of medical communications.

90.     In addition, family members are generally too personally and emotionally involved with the hearing impaired patient to act impartially and with the emotional detachment that is necessary for qualified sign language interpreters, particularly in medical settings and communications. The Defendant was unable to provide, and did not provide, effective communication to the Plaintiffs in any of the circumstances identified above in which the Defendants relied upon either of the Plaintiffs to communicate with the other.

91.     As a result of Defendant's failure to ensure effective communication with Plaintiffs, Plaintiffs received care and service that was objectively substandard and that is inferior to care provided to patients and patient family members who can hear.

92.     Furthermore, despite its knowledge and understanding of its legal obligations to provide adequate and effective communication to the Plaintiffs, and its knowledge and understanding that the failure to provide adequate and effective communication to Plaintiffs could and would result in denial of the Plaintiffs' rights under state and federal law and in serious and material harm and injury to Plaintiffs, Defendant knowingly, intentionally and maliciously failed and/or refused to provide adequate and effective communication to Plaintiffs in an intentional and/or deliberately indifferent violation of Plaintiffs' rights.

93.     It is reasonably foreseeable that Mrs. Reynolds-Sherwood and Mr. Sherwood will continue to visit one or more of Defendant's facilities, especially the Gilbert, Arizona urgent care facility, either by choice or necessity, due to the ubiquity of Defendant's facilities and the proximity of those facilities to the Plaintiffs' home or neighborhood. Based on Defendant's previous and repeated denials of effective communication for Plaintiffs, it is reasonably

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

foreseeable that a denial of effective communication for Plaintiffs as a result of Defendant's actions, omissions, policies or practices will occur again.

94.     Accordingly, Plaintiffs are aware of discriminatory barriers to access at Defendant's facilities and is thereby deterred from accessing Defendant's healthcare services because of the discrimination they have faced and expect to face in the future, even though they would do so if the discriminatory acts ceased. Therefore, Defendant's actions warrant the imposition of injunctive relief to ensure the cessation of Defendant's wrongful conduct.

95.     Defendant's actions and omissions resulting in harms to the Plaintiffs were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiffs under federal and state law and the substantial risk of serious and material harms to Plaintiffs. Therefore, to the extent allowed by any applicable law, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

## COUNT 1: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

96.     Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

97.     At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq.* has been in full force and effect and has applied to Defendant's conduct.

98.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

99.     At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of hearing and speaking.  Accordingly, they are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

100.     Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

14

101.   Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

102.   Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); *see also* 28 C.F.R. §§ 36.202.

103.   Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A)(iii).

104.   Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

105.   Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

106.   Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

107.   Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

108.    Pursuant to Title III of the ADA and its implementing regulations, when a public accommodation provides VRI service, it must ensure that the service includes all the following criteria: "(1) [r]eal-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) [a] sharply delineated image that is large enough to display the interpreter´s face, arms, hands, and fingers, and the participating individual´s face, arms, hands, and fingers, regardless of his or her body position; (3) [a] clear, audible transmission of voices; and (4) [a]dequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 36.303(f).

109.    Based on all of the foregoing allegations confirming the Defendant's treatment and interactions with the Plaintiffs, including those allegations at paragraphs 19-81 above, Defendant discriminated against the individual Plaintiffs on the basis of their disabilities by: (1) denying Plaintiffs an equal opportunity to participate in and benefit from Defendant's goods, services, facilities, privileges, advantages, and/or accommodations, in violation of 42 U.S.C. § 12182(b)(1)(A); (2) failing to ensure adequate and effective communication through the provision of on-site qualified Sign Language interpreters, in violation of 42 U.S.C. § 12182(b)(2)(A); (3) failing to ensure adequate and effective communication by relying on VRI systems, including systems that were not fully or adequately functioning, or other means of communication other than qualified, in-person Sign Language interpreters; (4) excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Plaintiffs or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E); and (5) failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

U.S.C. § 12182(b)(2)(A).

110.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional deaf persons.

111.    Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## COUNT 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

112.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

113.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendant's conduct.

114.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

115.    At all times relevant to this action, Plaintiffs have had substantial impairment to the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9), and its implementing regulations at 45 C.F.R. § 84.3(j).  Accordingly, they are individuals with a disability as defined under the Rehabilitation Act.

116.    At all times relevant to this action, Plaintiffs were qualified to receive services through Defendant's facilities.

117.    Upon information and belief, at all times relevant to this action, Defendant has received federal financial assistance, including Medicaid reimbursements, and has been principally engaged in the business of providing health care. Therefore, Defendant and its associated medical facilities qualify as a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

118.    Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

17

Federal financial assistance . . . ." 29 U.S.C. § 794.

119.    As set forth in the foregoing allegations about Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, including those allegations at paragraphs 19-81 above, Defendant has discriminated against and continues to discriminate against the Plaintiffs solely on the basis of their disabilities by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

120.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facility, including those allegations at paragraphs 19-81 above, Defendant further discriminated against the individual Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with the Plaintiffs through VRI systems that functioned properly; 3) requiring Plaintiffs to rely upon ineffective and inadequate means of communication including VRI systems, malfunctioning VRI systems, passing of handwritten notes, verbal gestures and/or lip reading.

121.    Defendant's violation of its obligations and the Plaintiffs' rights under the Rehabilitation Act and its implementing regulations has caused substantial damages, suffering, loss and harm to the Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.  Upon information and belief Defendant's violations of its obligations and Plaintiffs' rights may have also caused the exacerbation, increase, extension, or delay in the resolution of serious physical medical conditions, which itself has also caused additional emotional and physical harm, suffering and injury to Plaintiffs.

122.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiffs and other Deaf patients, their companions and family members.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

123.    Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

124.    Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

125.    Defendant's actions and omissions resulting in harms to the Plaintiffs were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiffs under federal and state law and the substantial risk of serious and material harms to the Plaintiffs. Therefore, to the extent the courts were to determine that punitive damages were recoverable under the Rehabilitation Act, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

### COUNT 3: VIOLATIONS OF THE ARIZONANS WITH DISABILITIES ACT

126.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

127.    At all times relevant to this action, the Arizonans with Disabilities Act (AzDA), A.R.S. § 41-1492, *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

128.    At all times relevant to this action, Plaintiffs had substantial impairment to a major life activity of hearing and speaking and are qualified individuals with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

129.    At all times relevant to this action, Defendant's facility at which Plaintiffs were served or treated was and is a place of public accommodation within the meaning of AzDA, A.R.S. § 41-1492(11).

130.    The AzDA, A.R.S. § 41-1492.02(A), states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public

accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

131.    Discrimination under the AzDA includes any "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services." A.R.S. § 41-1492.02(G)(3).

132.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, including those allegations at paragraphs 19-81 above, Defendant has discriminated against and continues to discriminate against Plaintiffs solely on the basis of their disabilities by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, by failing and refusing to modify the Defendant's policies, procedures and practices regarding reliance on VRI systems and refusal to provide live, on-site Sign Language interpreters, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of the AzDA and the Plaintiffs' rights thereunder.

133.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facility, including those allegations at paragraphs 19-81 above, Defendant specifically discriminated against Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with Plaintiffs through VRI systems that functioned properly; and 3) requiring Plaintiffs to rely upon ineffective and inadequate means of communication including VRI systems, malfunctioning VRI systems, passing of handwritten notes, verbal gestures and/or lip reading.

134.    Discrimination under the AzDA also includes, "[a] failure to make reasonable modifications in policies, practices or procedures, if these modifications are necessary to afford these goods, services, facilities, privileges, advantages or accommodations to individuals with

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations." A.R.S. § 41-1492.02(G)(2).

135. Upon information and belief, Defendant has a policy of using VRI except in certain discrete situations.

136. As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, including those allegations at paragraphs 19-81 above, Plaintiffs requested reasonable accommodations to Defendant's VRI policy and/or Defendant had reason to know of Plaintiffs' disabilities and inability to request an accommodation, Plaintiffs needed a reasonable accommodation, and Defendant denied Plaintiffs a reasonable accommodation, which resulted in Plaintiffs being harmed.

137. Defendant's violation of its obligations and the Plaintiffs' rights under the AzDA has caused substantial damages, suffering, loss and harm to Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms. Upon information and belief, Defendant's violations of its obligations and Plaintiffs' rights may have also caused the exacerbation, increase, extension, or delay in the resolution of serious physical medical conditions, which itself has also caused additional emotional and physical harm, suffering and injury to Plaintiffs.

138. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional Deaf persons.

139. Plaintiff is therefore entitled to seek and recover all appropriate compensatory damages and injunctive relief for the injuries and losses they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

140. Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law.

21

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

**COUNT 4:  VIOLATIONS UNDER AFFORDABLE CARE ACT SECTION 1557**

141.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

142.    At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 was in full force and effect and applied to the Defendant's conduct.

143.    At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

144.    At all times relevant to this action, Plaintiffs are substantially limited in the major life activity of hearing and speaking, and are individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 U.S.C. § 18116.

145.    At all times relevant to this action, such Plaintiffs' primary language for communication was American Sign Language and not English; and such Plaintiffs had limited ability to read, write, speak, or understand English, and were individuals with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

146.    At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

147.    Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

148.    Defendant has discriminated and continues to discriminate against Plaintiffs solely on the basis of their disabilities and their limited English proficiency by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective

communication in violation of Section 1557, 42 U.S.C. § 18116.

149.   Defendant discriminated against Plaintiffs by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through VRI machines that worked, as described in the foregoing paragraphs, particularly paragraphs 19-81 above.

150.   On information and belief, the refusal to offer qualified on-site ASL interpreter services is as a result of a policy or practice of Defendant to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

151.   As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiffs and other Deaf patients and family members.

152.   Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

153.   Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendant:

A.   Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act;

B.   Enter permanent injunctive relief enjoining Defendant from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

or hard of hearing, such as Plaintiffs, meaningful access to and full and equal enjoyment in Defendant's services or programs;

C.   Enter permanent injunctive relief ordering Defendant:

    i.    to develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate in the future against Plaintiffs and other similarly situated individuals who are deaf or hard of hearing or companions of deaf or hard of hearing persons by failing to provide effective communication;

    ii.    to develop, promulgate, implement and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member, or other person for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

    iii.    to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law. This notification will include posting explicit and clearly worded notices that Defendant will provide on-site sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

    iv.    to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes; 1) a high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position,

capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.   to provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

vi.   to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

vii.   to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night and whenever the services of such interpreters are required to provide effective communication to any deaf or hard of hearing patient or companion;

viii.   to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA;

ix.   to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

x.   to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

D.   Award to Plaintiffs:

i.   compensatory damages pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act sufficient to fully remedy all damages, suffering, injury and losses caused to Plaintiffs by Defendant;

ii.   to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

iii.   reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA;

iv.   interest on all amounts at the highest rates and from the earliest dates allowed by law; and

v.   any and all other relief that this Court finds just, necessary and appropriate.

## **JURY DEMAND**

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RESPECTFULLY SUBMITTED this 24th day of January, 2018.

BASKIN RICHARDS PLC


/s/ William A. Richards
William A. Richards
Alan S. Baskin
David E. Wood
Leslie Ross
2901 N. Central Avenue, Suite 1150
Phoenix, AZ  85012

AND

EISENBERG & BAUM, L.L.P.
Eric Baum, Esq.
Andrew Rozynski, Esq.
24 Union Square East
Fourth Floor
New York, NY 10003
*Attorneys for Plaintiffs*